INZER, Justice:
Appellant J. W. Wood was convicted in the Circuit Court of Jasper County of the crime of manslaughter in the killing of Robert Lee Williams. He was sentenced to serve a term of ten years in the State Penitentiary. From this conviction and sentence he appeals. We affirm.
This is the second appearance of this case before the Court. Appellant was indicted for the crime of murder and was convicted of manslaughter. The facts in the record on this trial in all important particulars are as were the facts in the former trial, and they are set out in considerable detail in our opinion, Wood v. State, 257 So.2d 193 (Miss.1972). We do not deem it necessary for a decision to detail them again in this opinion.
Appellant assigns as error the refusal of the trial court to direct a verdict of not guilty at the conclusion of the state’s case and at the close of all the evidence. This same error was assigned on former appeal, and we found it to be without merit. However, appellant contends on this appeal that the state fails to prove the corpus delicti beyond a reasonable doubt. This contention was not made on the former appeal and was not considered by the court. The record established that appellant shot Williams on September 19, 1970, with a .12 gauge shotgun. The load from the shotgun shell struck the deceased near the left hip. Dr. Ernest McCraw saw Williams in the emergency room at Jones County Hospital. He found Williams had received a penetrating wound to the left hip and was in a state of shock. Supportive treatment was administered and x-rays were taken. Williams was then carried to the operating room where the abdomen was opened. No injuries to the abdominal organs were found. However, there were large blood clots in the pelvic orbits behind the posterior lining of the abdomen. The doctor described the wound as being about three inches in diameter and extending completely across the pelvic cavity and into or at least up to the right hip bone. He found multiple bone fragments from the hip bone, wadding from the shotgun shell, and numerous lead pellets in the wound. Williams appeared to be recovering from the wound, but suddenly died on October 1, 1970. An autopsy was performed that same day by Dr. Anna Nell Bland, a qualified practicing pathologist. It was Dr. Bland’s opinion that Williams died from a pulmonary embolism, which is a blood clot in the lungs. However, she was unable to determine the source of the blood clot. It was Dr. McCraw’s opinion that the blood clot in the lungs resulted from the injury to the pelvic blood vessels which was caused directly from the gunshot wound. Dr. McCraw on cross examination would not rule out other possible sources of the embolism, but he was firm in his opinion that the gunshot wound was the only medically probable source of the blood clot and was the proximate cause of death.
Appellant admits that the state proved the death of Williams, but contends that it failed to prove beyond a reasonable doubt that the death resulted from a criminal agency. We are of the opinion that the evidence on behalf of the state was ample to withstand appellant’s motion for a directed verdict. The court instructed the jury at the request of appellant that the burden was upon the state to prove beyond a reasonable doubt that Williams died as a direct result of the gunshot wound inflicted upon him by the deceased, and if the state failed to so prove, it was their sworn duty to find appellant not guilty. The jury found by its verdict that the state had proven to its satisfaction beyond a reasonable doubt that Williams died as a direct result of 'the gunshot wound inflicted by appellant. We are of the opinion that there was ample evidence to support this finding. Schroer v. State, 250 Miss. 84, 160 So.2d 681 (1960), and Houston v. State, 220 Miss. 166, 70 So.2d 338 (1954).
We have carefully considered appellant’s other contentions that he should have been granted a directed verdict or a peremptory *89 instruction and find them to be without merit.
We find no merit in appellant’s assignment of error that the trial court should have granted a mistrial because of the prejudicial conduct of the district attorney during final summation. It appears from the special bill of exceptions that the district attorney in his final argument, picked up the shotgun shown to be the one used to shoot Williams, which was an exhibit, and laid it next to and directly in front of the defendant on the counsel table. An objection was made and the same was overruled. But the court directed that the gun be moved to the other end of the table, which was done. The appellant did not testify, and it is argued that the conduct of the district attorney amounted to use of the appellant as a witness against his wishes and drew the attention of the jury to how he would have looked on the witness stand with the gun immediately in front of him. There is no dispute in the evidence that appellant shot the deceased, and the gun introduced in evidence was the one used to inflict the wound that resulted in the death of Williams. The trial judge observed the action of the district attorney, and although he directed the district attorney to move the gun, he did not deem the conduct to be prejudicial. The district attorney made no remarks that could be considered a comment on the fact that appellant did not testify. Under these circumstances we are unable to say that the conduct of the district attorney was so prejudicial that the trial court abused its discretion in overruling the motion for a mistrial. Roberson v. State, 257 So.2d 505 (Miss.1972).
Appellant assigns as error the refusal of the trial court to set aside the verdict of the jury when it was discovered that the clerk had given the indictment to the jury and had carried it in the jury room while deliberating on the verdict. It is contended that it was error to permit the jury to carry the indictment into the jury room, and it was especially prejudicial in this case because when the indictment was amended to charge manslaughter instead of murder, it was done by interlining through certain words in a manner which left it still clear to the jury that the grand jury had indicted appellant for murder, and someone was having mercy upon him in trying him for a lesser crime. It is argued that this in some way was prejudicial to the defendant. Appellant has not favored us with citations of any authority to support this contention.
It has long been the practice in this state to permit the jury to take to the jury room the indictment, together with all exhibits introduced in evidence, in fact, Section 1528, Mississippi Code 1942 Annotated (1956), provides: “All papers read in evidence on the trial of any cause may be carried from the bar by the jury.” It is necessary that the jury be informed of the charge against the accused. In fact, it is the duty of the judge to see that the jury is informed of the precise charge against the accused and to do so may read the indictment to the jury. In McGuire v. State, 76 Miss. 504, 25 So. 495 (1898), it is said that it is always presumed that' such was done. If the indictment can be read to the jury, we are unable to see how it would be prejudicial to the defendant for the indictment to be carried into the jury room. In some cases it is essential for the jury to have the indictment in order to determine all the issues. It is with us as it was to the Supreme Court of Georgia when this question was raised in Broughton v. State, 186 Ga. 588, 199 S.E. 111, 120 A.L.R. 460 (1938). The Court there said, among other things:
If the precise point here made has ever been passed on by this court, we have been unable to find it; but we can perceive no reason why the rule should be different in criminal from what it is with respect to civil cases. We can see no harm in the practice. We believe it to be an accepted and established custom, in the trial of criminal cases in this State, to send the indictment out with *90 the jury when they enter upon their deliberations. A practice, hoary with age, acquiesced in for a time whereof the memory of man runneth not to the contrary, must be the law. ... It has never been decided, so far as we can learn, that it was error in a criminal case to state to the jury that the indictment containing the charge against the prisoner would be sent to the jury room, and that they were at liberty to read it; and we apprehend it never will be so decided.
(186 Ga. at 590, 199 S.E. at 112, 120 A. L.R. at 462).
However, if in any case there should be a valid reason why this practice should not be permitted, it would be an easy matter to bring it to the attention of the court before the jury retires. The court then can exercise its discretion in determining whether the jury should be permitted to carry the indictment into the jury room. When permitted, on request, the court should instruct the jury that the fact that defendant, had been indicted is not evidence of the facts charged in the indictment and should not be considered as evidence of his guilt. In fact, such an instruction was requested and granted in this case. We are unable to agree with appellant’s argument that the jury may have gleaned from the indictment that he was indicted for murder and that it had been amended to charge manslaughter was prejudicial.
We have carefully considered the other errors assigned and find them to be without merit. While this is a close case on the facts, we cannot say that the verdict of the jury is against the -overwhelming weight of the evidence. Two juries have considered the evidence and have found appellant guilty of manslaughter. There being no reversible error in this record, the case must be and is affirmed.
Affirmed.
RODGERS, P. J., and PATTERSON, ROBERTSON, and WALKER, JJ., concur.